[Cite as *State v. Senz*, 2018-Ohio-628.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.      17CA0001-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MARK A. SENZ | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No.      15CR0146 |

DECISION AND JOURNAL ENTRY

Dated: February 20, 2018

CARR, Judge.

{¶1}  Defendant-Appellant Mark Senz appeals from his conviction in the Medina County Court of Common Pleas.  This Court affirms.

I.

{¶2}  Senz was indicted in March 2015 on one count of petty theft, a first degree misdemeanor, and one count of complicity to commit trafficking in cocaine, a fifth degree felony.  Following a trial, a jury found Senz not guilty of complicity to commit trafficking in cocaine and guilty of petty theft.  Senz then filed a motion for acquittal pursuant to Crim.R. 29(C) and renewed his previous motions made at trial.  The trial court denied the motions and sentenced Senz to 180 days in jail and fined him $1000.  The sentencing entry reflects that court costs were waived.

{¶3}  Senz has appealed, raising four assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY FAILING TO GRANT A JUDGMENT OF ACQUITTAL, PURSUANT TO CRIM.R. 29(A), ON THE CHARGE, AND THEREAFTER ENTERING A JUDGMENT OF CONVICTION OF THE OFFENSE AS THAT CHARGE WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE, IN VIOLATION OF DEFENDANT'S RIGHT TO DUE PROCESS OF LAW, AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶4} Senz argues in his first assignment of error that the trial court erred in denying his Crim.R. 29 motion. Specifically, he challenges the sufficiency of the evidence establishing mens rea and whether he used deception. In addition, he maintains that the State was required to demonstrate that he had the specific purpose to deprive the Medina County Drug Task Force/Medina County Commissioners of the $60 in light of the language in the indictment. Thus, he asserts that he had to know the money belonged to the drug task force/county, which he argues the State failed to establish. We will confine our analysis to the limited arguments made by Senz on appeal.

{¶5} Crim.R. 29(A) provides:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶6} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶7} Senz was found guilty of violating R.C. 2913.02(A)(3). R.C. 2913.02(A)(3) states that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception[.]"

{¶8} "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." Former R.C. 2901.22(A).

"Deprive" means to do any of the following:

(1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;

(2) Dispose of property so as to make it unlikely that the owner will recover it;

(3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

R.C. 2913.01(C).

{¶9} "'Owner' means, unless the context requires a different meaning, any person, other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in property or services, even though the ownership, possession, control, license, or interest is unlawful." R.C. 2913.01(D). "A person acts knowingly, regardless of his purpose, when is aware that his conduct will probably cause a certain result or will probably be

of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Former R.C. 2901.22(B). "'Deception' means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. 2913.01(A).

{¶10} The testimony of the State's witnesses at trial supported the following narrative. In early 2015, members of the Medina County Drug Task Force began working with a confidential source, B.S., in order to buy drugs from Charles Sarno. Sarno, who was on house arrest, indicated that he had a supplier in Akron that could get Sarno an eight ball of cocaine for $180 and 20 Percocet pills for $180. On February 5, 2015, B.S. was provided with $360 of the Medina County Drug Task Force's money in order to conduct the transaction. B.S. and his vehicle were searched prior to the transaction and the money was photocopied to document the serial numbers. B.S. was also wired so that the members of the task force could monitor what was happening to help ensure B.S.'s safety.

{¶11} B.S. arrived at Sarno's residence and was invited inside. B.S. provided Sarno with the money and Sarno expressed concern about buying from the person who was going to bring the drugs because he did not really know the person. Sarno told B.S. that if anything went wrong, Sarno would repay B.S. Sarno also indicated that he would call the person to have him come over. Shortly thereafter, Sarno went outside and met the driver of a blue Saturn who had pulled into the driveway. Sarno went back inside and the car left. Sarno told B.S. that the driver had a gun on his lap and told Sarno to take the drugs and go or leave them. Sarno returned to the

house with pills and a bag containing a powdery white substance. Sarno and B.S. both thought the pills and powder were counterfeit. Ultimately, the pills were found to be acetaminophen and the powder was described by one witness as being baking soda.

{¶12} Upon hearing Sarno mention that the driver of the vehicle had a gun, Agent John Stayrook of the Medina County Drug Task Force called B.S. and told him to leave. B.S. left and met at the predetermined spot where the pills were recovered from him.

{¶13} In the interim, Deputy Dan Kohler with the Medina County Sheriff's Department initiated a traffic stop on the vehicle that had left Sarno's residence. No gun was found in the vehicle. Senz, who was the driver, had $60 in his hand; the serial numbers on the money matched serial numbers on the money given to B.S. to use in the attempted drug transaction.

{¶14} Gary Hubbard, the Director of the Medina County Drug Task force, spoke with Senz at the traffic stop after Senz was read his rights. Senz, who was Sarno's half-brother, told Director Hubbard that Senz received a call from Sarno around 1 p.m. on February 5th. Sarno "asked him if he wanted to make $50. [] Senz told [Director Hubbard] that, you know, [he'd] give [Senz] $50." Sarno told Senz that "[t]his guy's coming over to buy drugs and [Sarno was] going to rip him off, meaning give him fake drugs." Senz indicated that "he agreed to do that, that he was supposed to show up around 5 o'clock and that's when the entire transaction took place." Senz also indicated that Sarno was going to call Senz to tell him when to arrive. Senz relayed that, when he arrived, Sarno walked out of the residence, approached the driver's side of the car and gave him $60, walked back into the house, and Senz left. From the conversation, Detective Hubbard concluded that Senz "knew exactly what was going on."

{¶15} Agents also went to Sarno's residence, arrested him, and searched the premises. Agent Michael Barnhardt located a plastic bag containing baking soda in the trash and Sarno

informed the agents that the money was in kitchen cabinet; $300 was recovered from the cabinet. The serial numbers on that money matched serial numbers on the money that was given to B.S. to complete the transaction.

{¶16} Considering Senz's limited arguments on appeal, and the evidence in a light most favorable to the prosecution, we conclude that the trial court did not err in denying Senz's Crim.R. 29 motion. Part of Senz's argument is that, in order to be found guilty, the State had to demonstrate that it was Senz's purpose to deprive the Medina County Drug Task force of U.S. currency. Thus, he asserts that he had to know that the money belonged to that agency. He bases his argument on the language in the indictment that specifically references the Medina County Drug Task Force/Medina County Commissioners as the owners of the currency.[1] We are unpersuaded by his argument.

{¶17} Senz has pointed us to no authority indicating that the State was required to demonstrate that Senz knew the identity of the owner of the property at issue. *See* App.R. 16(A)(7). In fact, there is case law that indicates that the identity of the owner of the property is not an element of the offense. *See State v. Mason*, 10th Dist. Franklin No. 91AP-1012, 1992 Ohio App. LEXIS 3775, *13 (July 14, 1992) ("While the name of the person from whom the property was allegedly stolen is typically included in the indictment, it is not an element of a theft offense."); *State v. Miller,* 3d Dist. Shelby No. 17-13-24, 2015-Ohio-644, ¶ 30, quoting *State v. Jones,* 8th Dist. Cuyahoga No. 92921, 2010-Ohio-902, ¶ 12 ("'[T]he gist of a theft

---

[1] The indictment states that on or about February 5, 2015, "Mark A. Senz unlawfully did, with purpose to deprive the Medina County Drug Task Force/Medina County Commissioners, the owner of property or services, to-wit: U.S. Currency, knowingly obtain or exert control over said property or services, by deception in violation of Section 2913.02(A)(3) of the Ohio Revised Code, a misdemeanor of the first degree (M-1), contrary to the statute in such cases made and provided and against the peace and dignity of the State of Ohio."

offense is the wrongful taking by the defendant, not the particular ownership of the property.'"); *State v. King,* 10th Dist. Franklin Nos. 88AP-665, 88AP-1082, 1989 Ohio App. LEXIS 2897, *20 (July 18, 1989) ("[T]he state did not have to prove exactly who owned the property at the time it was stolen."); *State v. Bamonte*, 1st Dist. Hamilton No. C-850246, 1986 Ohio App. LEXIS 8025, *9-10 (Aug. 27, 1986); *State v. Denson*, 3d Dist. Allen No. 1-83-54, 1984 Ohio App. LEXIS 11767, *6 (Dec. 6, 1984) ("[A]s to proving the theft offense, the identity of the owner is not necessary. What is necessary is that the property was not the defendant's when he took the property."); *see also* R.C. 2913.01, Legislative Service Commission Comment (1973) ("The gist of theft is a wrongful taking rather than a particular ownership, and it is sufficient that a thief knows that property or services are not his to take."). The Supreme Court has even concluded that, under the statute, "a thief can steal from a thief[.]" *State v. Rhodes*, 2 Ohio St.3d 74, 76 (1982). This is so because "it is merely necessary to prove that a defendant deprived someone of property who had 'possession or control of, or any license or any interest in' that property. It is unnecessary, however, for one from whom possession or control is taken to have lawful possession or control[.]" *Id.* Accordingly, if the State did not have to prove who owned the property, it would seem logical that the State would not have to demonstrate that the defendant knew who owned the property.

{¶18} To the extent that Senz generally argues that the State failed to demonstrate that he acted knowingly or purposely, or that he used deception, we also disagree. Viewing the testimony in a light most favorable to the prosecution, there was evidence that Sarno informed Senz that Sarno was supposed to sell someone cocaine and that he planned to "rip him off" by selling fake drugs. Sarno asked Senz if he wanted to make $50 helping Sarno do so. There was evidence that Senz agreed to assist Sarno and that Senz showed up at Sarno's residence at the

designated time and took money from Sarno when he came out to Senz's vehicle to meet him. From those circumstances, when considered in light of Senz's limited argument and when viewed in a light most favorable to the prosecution, a trier of fact could infer that Senz had the purpose to deprive the owner of property and knowingly obtained or exerted control over the property by deception. *See* R.C. 2913.02(A)(3).

{¶19} Senz's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶20} Senz argues in his second assignment of error that his conviction for petty theft is against the manifest weight of the evidence.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶21} Senz argues that his conviction was against the weight of the evidence because the jury was "so caught in the drug allegations that it chose to ignore the evidence as to the theft

charge[]" or because Senz' credibility was "ruined by his trial lawyer's asking about his drug trafficking conviction from when he was 18 years old[.]"

{¶22} Senz testified in his own defense. Senz, who was 42 at the time of trial, acknowledged that he had a prior conviction for trafficking in marijuana when he was 18 or 19 years old. However, he asserted that since then, he had no history of drug trafficking and was not involved with his brother's drug deals. Nonetheless, he was aware that Sarno was involved in drug trafficking.

{¶23} Senz testified that he lost his job in the beginning of January 2015, and was unemployed on February 5, 2015. Thus, money was tight. Sarno, Senz's half-brother, was aware that Senz needed money. Around 1 p.m. on February 5, 2015, Sarno called Senz and offered to loan him money to get license plates because Senz's 30-day plates were about to expire. Sarno told Senz that someone owed Sarno money and that if Senz came over around 5 p.m., Sarno would give Senz $50 to get his license plates.

{¶24} When Senz arrived at Sarno's residence, Sarno came outside, hopped in Senz's backseat, handed Senz $60, jumped out, and went back in the house. Senz testified that there was no exchange of drugs, real or counterfeit, or talk about drugs. Senz then left and was shortly thereafter pulled over by the police. Senz denied that he ever confessed to participating in Sarno's drug transaction; Senz testified that he told Director Hubbard exactly what he had just told the jury. Thus, Senz maintained that Director Hubbard was lying when he testified that Senz told Director Hubbard about agreeing to assist Sarno in the transaction.

{¶25} In light of Senz's limited argument on appeal, we cannot say that he has demonstrated that the jury lost its way in convicting Senz of petty theft. The jury was not required to believe Senz's version of events and heard from Director Hubbard that Senz had

admitted to having a role in Sarno's scheme to steal money by passing counterfeit drugs off as genuine drugs. We remain mindful that the jury had an opportunity to view the witnesses and "was in the best position to assess the credibility of the evidence presented by the parties at trial." *State v. Klingel*, 9th Dist. Lorain No. 15CA010876, 2017-Ohio-1183, ¶ 22. "[T]his Court will not overturn the [] verdict[s] on a manifest weight of the evidence challenge simply because the jury chose to believe certain witnesses' testimony." (Internal quotations and citations omitted.) *State v. Binford*, 9th Dist. Summit No. 27950, 2016-Ohio-7678, ¶ 10.

**{¶26}** In light of the foregoing, Senz's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY SECTION 10, ARTICLE I, OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS.

**{¶27}** Senz argues in his third assignment of error that he was denied the effective assistance of counsel when trial counsel brought up Senz's over 20 year old drug trafficking conviction during trial counsel's direct examination of Senz.

**{¶28}** In order to prevail on a claim of ineffective assistance of counsel, Senz must show that his "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* at 686. Thus, a two-prong test is necessary to examine such claims. First, Senz must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland* at

687. Second, he must demonstrate that but for counsel's errors, there is a reasonable probability that the results of his trial would have been different. *Keith* at 534.

{¶29} Near the end of trial counsel's direct examination of Senz, trial counsel asked whether Senz had a prior conviction for trafficking in marijuana. Senz replied affirmatively. Senz, who was 42 years old at the time of trial, testified that he was 18 years old when he was convicted. Trial counsel then asked Senz whether he had any history of drug trafficking since that point in time, and Senz replied that he had not.

{¶30} On appeal, Senz argues that there was no reason to ask Senz about the drug trafficking conviction, and that doing so only harmed his credibility with the jury. Senz maintains that, due to the age of the conviction, the State would not have been able to ask Senz about it during trial, absent trial counsel opening the door.

{¶31} Senz has not demonstrated that trial counsel's tactic prejudiced Senz. Senz was found not guilty of the complicity to commit trafficking in cocaine charge. Accordingly, Senz has not presented any evidence that trial counsel's strategy negatively affected Senz's credibility or that the jury used the evidence of Senz's prior conviction in an improper manner. Thus, Senz has not shown that "but for counsel's error[], there is a reasonable probability that the result[] of [Senz's] trial would have been different." *Keith*, 79 Ohio St.3d at 534; *see also State v. Ellis,* 9th Dist. Summit No. 27013, 2014-Ohio-4186, ¶ 28 (noting that even if admission of other acts evidence of drug trafficking was improper, such admission was harmless when defendant was acquitted of trafficking charge); *State v. Jackson,* 1st Dist. Hamilton No. C-110570, 2012-Ohio-2727, ¶ 21.

{¶32} Senz's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE COURT COSTS IMPOSED AT THE SENTENCING HEARING INFRINGES UPON APPELLANT'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, R.C. 2929.18, R.C. 2919[.19](B)(5), R.C. 2947.14, AND RELATED SECTIONS OF THE OHIO CONSTITUTION.

{¶33} Senz argues in his fourth assignment of error that the trial court erred in imposing court costs and a fine for his first degree misdemeanor conviction without holding a hearing at the time of sentencing to determine Senz's ability to pay those sums.

{¶34} "A trial court generally has discretion in misdemeanor sentencing." *State v. Woody*, 9th Dist. Lorain No. 14CA010679, 2016-Ohio-631, ¶ 15, citing *State v. Schneider*, 9th Dist. Wayne No. 09CA0026, 2009-Ohio-6025, ¶ 6. "'Unless a sentence is contrary to law, we review challenges to misdemeanor sentencing for an abuse of discretion.'" *Woody* at ¶ 15, quoting *Schneider* at ¶ 6. An abuse of discretion indicates that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶35} Initially, we note that "the imposition of court costs under R.C. 2947.23 does not require the trial court to first consider the defendant's ability to pay." *State v. Battle,* 9th Dist. Summit No. 27549, 2016-Ohio-2917, ¶ 23. Here, at the sentencing hearing, the trial court imposed court costs and a $1000 fine. However, the sentencing entry reflects that the payment of courts costs was waived. "It is axiomatic that a court speaks through its journal entries." *State v. Jones,* 9th Dist. Lorain No. 15CA010801, 2017-Ohio-1181, ¶ 7. In light of the trial court's judgment entry, Senz has not demonstrated that he will be subjected to the payment of court costs. Given all of the foregoing, Senz's argument with respect to costs is without merit.

{¶36} With respect to Senz's fine, Senz cites and relies upon R.C. 2929.19(B)(5) for the proposition that the trial court was required to consider his present and future ability to pay the

fine. However, R.C. 2929.19(B) relates to felony sentencing, as opposed to misdemeanor sentencing, and thus, would be inapplicable to his circumstances.

**{¶37}** Senz also cites to R.C. 2947.14(A) for the proposition that the trial court was required to hold a hearing at the time of sentencing to determine Senz's ability to pay the fine. R.C. 2947.14(A) provides:

> If a fine is imposed as a sentence or a part of a sentence, the court or magistrate that imposed the fine may order that the offender be committed to the jail or workhouse until the fine is paid or secured to be paid, or the offender is otherwise legally discharged, if the court or magistrate determines at a hearing that the offender is able, at that time, to pay the fine but refuses to do so. The hearing required by this section shall be conducted at the time of sentencing.

**{¶38}** On its face, this section addresses sanctions a sentencing court may impose for a defendant's failure to pay a fine when he or she is able to do so. R.C. 2947.14(A). The section provides for a hearing to determine the ability to pay and provides that the hearing shall be conducted at the time of sentencing. *Id.* Senz has developed no argument as to why this particular section would apply to him, nor has he explained why the sentencing hearing referenced in the statute must be the original sentencing hearing. *See* App.R. 16(A)(7); *State v. Ramsey*, 5th Dist. Licking No. , 2014-Ohio-4232, ¶ 16 (noting and following "the line of Ohio case law holding the hearing requirement is not triggered until the trial court decides to incarcerate the offender for failure to pay the fine"). Under these circumstances, Senz has failed to meet his burden on appeal to demonstrate that the trial court was required to hold a hearing to determine his ability to pay the fine or that the trial court had to consider his ability to pay the fine. *See* App.R. 16(A)(7). Senz has failed to develop any argument explaining how the trial court's actions violated the misdemeanor sentencing scheme. We will not develop an argument on his behalf. *See Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998).

**{¶39}** Senz's fourth assignment of error is overruled.

III.

**{¶40}** Senz's assignments of error are overruled.  The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

THOMAS REIN, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.