[Cite as *State v. Zappa*, 2022-Ohio-243.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | | |

STATE OF OHIO

    Appellee

    v.

GERARD ZAPPA

    Appellant

C.A. No.     20AP0025

APPEAL FROM JUDGMENT
ENTERED IN THE
WAYNE COUNTY MUNICIPAL COURT
COUNTY OF WAYNE, OHIO
CASE No.     2020 CR-B 000032

DECISION AND JOURNAL ENTRY

Dated: January 31, 2022

---

CALLAHAN, Judge.

{¶1} Appellant, Gerard Zappa, appeals his conviction by the Wayne County Municipal Court. This Court affirms in part and reverses in part.

I.

{¶2} Mr. Zappa made an appointment for a ninety-minute massage at Nail Spa and Salon in Wooster. M.E., who provided the massage to Mr. Zappa, terminated the massage near the end of the appointment because she believed Mr. Zappa's behavior to be inappropriate. The spa owner called the Wooster Police Department after Mr. Zappa left the premises, and M.E. informed the police that Mr. Zappa exposed himself to her and engaged in inappropriate sexual movements during the massage. An officer spoke with Mr. Zappa by telephone after the incident, but Mr. Zappa declined to meet with him to provide a statement.

{¶3} Mr. Zappa was charged with two counts of public indecency in violation of R.C. 2907.09(A)(1) and (A)(2), respectively. The State filed a motion in limine requesting that the

trial court prohibit the defense from introducing evidence regarding M.E.'s licensure level with respect to massage, arguing that it was irrelevant to the proceedings and could risk "a trial regarding the legitimacy of [M.E.'s] professional licensing as opposed to the relevant facts relating to the public indecency charges." The trial court concluded that the defense could inquire on cross-examination into M.E.'s "training, experience, education, and other relevant factors" but prohibited the defense from eliciting testimony about her licensure.

{¶4} Mr. Zappa waived his right to a jury trial. The trial court found him guilty of each charge, imposed fines, sentenced him to community control for twenty-four months, and imposed a jail term of sixty days. Mr. Zappa appealed. His four assignments of error are rearranged for purposes of discussion.

## II.

### ASSIGNMENT OF ERROR NO. 2

THE STATE LACKED SUFFICIENT EVIDENCE TO SUPPORT BOTH OF MR. ZAPPA'S CONVICTIONS FOR PUBLIC INDECENCY AND CONSEQUENTLY, THOSE CONVICTIONS MUST BE REVERSED.

{¶5} In his second assignment of error, Mr. Zappa has argued that his convictions for public indecency are not supported by sufficient evidence. This Court does not agree.

{¶6} As an initial matter, this Court notes Mr. Zappa has not separately argued his assignments of error with respect to sufficiency and manifest weight. Contrary to his argument, sufficiency and manifest weight are separate and distinct questions, and this Court has repeatedly noted that it is not appropriate to combine sufficiency and manifest weight arguments within a single discussion. *See*, *e.g.*, *State v. Seibert*, 9th Dist. Wayne Nos. 20AP0013, 20AP0014, 2021-Ohio-3069, ¶ 13, quoting *State v. Vicente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 18, and *State v. Mukha*, 9th Dist. Wayne No. 18AP0019, 2018-Ohio-4918, ¶ 11. *See*

*also State v. Perkins*, 9th Dist. Wayne No. 20AP0031, 2021-Ohio-2630, ¶ 9; App.R. 12(A)(2); Loc.R. 7(B)(7).[1]  Moreover, "these concepts differ both qualitatively and quantitatively." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387 (1997).

{¶7}    "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *Thompkins* at 386 (1997).  The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring).  For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  We do not evaluate credibility, and we make all reasonable inferences in favor of the State.  *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).  The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt.  *Id.*

{¶8}    R.C. 2907.09(A)(1)/(2) prohibits any person from "recklessly * * * under circumstances in which the person's conduct is likely to be viewed by and affront others who are in the person's physical proximity and who are not members of the person's household * * * [e]xpos[ing] the person's private parts [or] * * * [e]ngag[ing] in sexual conduct or masturbation[.]"  Although not defined by statute, courts have determined that "private parts," as used in R.C. 2907.09(A)(1), refers to genitals. *See State v. Jetter*, 74 Ohio App.3d 535, 536 (1st Dist.1991) fn. 1.  The term "masturbation" is likewise undefined by the Revised Code, but, looking to the plain and ordinary meaning of the term, this Court has explained that the term

---

[1] As of January 1, 2022, this provision is now found in Loc.R. 16(A)(7).

includes both "the stimulation *or* the manipulation of one's genital organs." (Emphasis in original.) *State v. Marrero*, 9th Dist. Lorain No. 08CA009467, 2009-Ohio-2430, ¶ 24-25, citing *Columbus v. Heck*, 10th Dist. Franklin No. 98AP-1384, 1999 WL 1009734, *5 (Nov. 9, 1999). Consequently, this Court has noted that "masturbation" can be defined as:

> "'the manipulation of genital organs for sexual gratification by means other than sexual intercourse.' Neither that definition nor the common, ordinary meaning of the term masturbation requires any expressed or observed sexual gratification that indicates the individual is finding pleasure. Rather, sexual gratification is the motivation for engaging in that behavior. That motive reasonably can be inferred whenever a person engages in that conduct * * *."

*Marrero* at ¶ 24, quoting *State v. Johnson*, 2d Dist. Montgomery No. 21335, 2006-Ohio-4935, ¶ 20, quoting *Heck* at *5. "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶9} Mr. Zappa argues that his conviction is not supported by sufficient evidence that he "recklessly * * * [e]xpos[ed] [his] private parts" to M.E in violation of R.C. 2907.09(A)(1). He also argues that there is no evidence that he engaged in masturbation in violation of R.C. 2907.09(A)(2). The record demonstrates otherwise.

{¶10} M.E. testified that, as was her practice prior to a massage session, she greeted Mr. Zappa and instructed him before leaving the room for him to remove his clothing except for his undergarments. She recalled that Mr. Zappa told her he was wearing boxer shorts and asked for a towel, which she assumed that he wanted for extra covering. When she returned to the massage room, Mr. Zappa was face-down on the massage table covered by the sheet, but she did not see the towel. M.E. explained that although Mr. Zappa told her that he had "trouble issues with his groin area[,]" she did not normally massage that area and focused on the back of his thigh instead.

**{¶11}** M.E. testified that as she did so, Mr. Zappa was "groaning and moaning[.]" She recalled that she asked Mr. Zappa whether he was in pain and noted that he was making a sexual motion on the bed that included raising his buttocks, which caused the draping to come off of his body. M.E. testified that as he did so, Mr. Zappa said, "'Oh this feels so f'ing good[.]'" She explained that Mr. Zappa made these motions for approximately three to five minutes and that she had to redrape him three or four times. She testified that she also realized at that point that Mr. Zappa was not wearing undergarments. She explained that the situation made her uncomfortable, but that she continued with the massage.

**{¶12}** M.E. testified that Mr. Zappa flipped to his back halfway through the massage, leaving his genital area covered but his thigh, legs, and body uncovered. She recalled that Mr. Zappa instructed her to continue massaging the same area of his thigh. Although she remained uncomfortable, M.E. decided that she could "get through the last fifteen minutes[.]" M.E. testified that at that point, however, she noticed that Mr. Zappa's left hand, which had previously been lying next to him on the table, moved to his genital area. She recalled that as Mr. Zappa continued to express that the massage "just kept feeling good[,]" he began to touch his penis in a pulling motion, moving side to side and up and down. M.E. testified that as he did so, the top of his penis was exposed. At that time, according to her testimony, M.E. attempted to end the massage because she was uncomfortable. In response, Mr. Zappa implored her to continue massaging the same area. M.E. testified that although she started to do so, she noticed that Mr. Zappa "was starting to caress his penis again" and twice stated that he "could take care of [her]." M.E. did not continue because she "just knew it wasn't right[.]"

**{¶13}** Viewing this evidence in the light most favorable to the State, as we must, this Court concludes that a trier of fact could reasonably conclude beyond a reasonable doubt that

Mr. Zappa acted at least with "heedless indifference to the consequences" and "disregard[ed] a substantial and unjustifiable risk" that his actions would expose himself to M.E. in violation of R.C. 2907.09(A)(1). *See* R.C. 2901.22(C). Similarly, a trier of fact could reasonably conclude beyond a reasonable doubt that Mr. Zappa manipulated his genitals for the purpose of sexual gratification. *See Marrero*, 2009-Ohio-2430, at ¶ 24, quoting *Johnson*, 2006-Ohio-4935, at ¶ 20, quoting *Heck*, 1999 WL 1009734, at *5.

{¶14} Mr. Zappa has also argued that the State did not produce sufficient evidence that his conduct was "likely to be viewed by and affront others who [were] in [his] physical proximity[.]" *See* R.C. 2907.09(A). Specifically, Mr. Zappa urges this Court to conclude that R.C. 2907.09(A) requires the conduct of an accused to be measured by a reasonable person in circumstances specific to the victim. In this case, then, he argues that this Court should conclude that a reasonable massage provider would not be affronted in these circumstances. Whether viewed from that prospective or not, however, this Court concludes that there was sufficient evidence at trial from which the trier of fact could reasonably conclude that Mr. Zappa's conduct was likely to cause affront to M.E.

{¶15} Mr. Zappa's convictions for public indecency were supported by sufficient evidence, and his second assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 1

MR. ZAPPA'S PUBLIC INDECENCY CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AS A RESULT, HIS RIGHTS UNDER THE 14TH AMENDMENT OF THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION WERE VIOLATED.

{¶16} In his first assignment of error, Mr. Zappa argues that his convictions for public indecency are against the manifest weight of the evidence. This Court does not agree.

{¶17} When considering whether a conviction is against the manifest weight of the evidence, this Court applies a different standard than in a sufficiency analysis. *See State v. Martinez-Castro*, 9th Dist. Lorain No. 18CA011361, 2019-Ohio-1155, ¶ 14, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11-13. To evaluate the weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶18} In support of his argument that his convictions are against the manifest weight of the evidence, Mr. Zappa has argued that M.E.'s testimony was unpersuasive, that the circumstances demonstrated that he was not reckless, that there are alternative explanations for his conduct, and that the evidence does not demonstrate that a person in M.E.'s position was likely to be affronted by his conduct. Undergirding these arguments is the more fundamental proposition that Mr. Zappa's testimony regarding the events in question was more credible than M.E.'s testimony.

{¶19} Mr. Zappa testified that M.E. told him to leave his underwear on, but according to his testimony, he told her that the boxers he was wearing would interfere with the massage. He explained that he requested a towel as an additional layer between his body and the sheet with his underwear removed, and he expressed that he was surprised when she brought him a small towel. Mr. Zappa testified that M.E. would have immediately known that he was not wearing

underwear once she began the massage. He denied that he made movements of a sexual nature while lying prone on the massage table but testified that there may have been "a couple of times where [he] would adjust a little bit." He denied that he exposed himself to M.E. or masturbated during the massage, speculating that the draping may have slipped. Mr. Zappa also testified that when he said that he would "take care of" M.E., his intention was to compensate her financially for an extended massage session.

{¶20} Mr. Zappa suggests that M.E.'s testimony is unbelievable because she testified that she completed almost the entire ninety-minute massage and acknowledged that, at the time, she believed that some of his actions had innocent explanations. Considering her entire testimony in context, however, this argument is unpersuasive. M.E. did testify that when Mr. Zappa made moaning sounds during the massage, she assumed that he was in pain or that he was repositioning himself. She also explained, however, that she was uncomfortable but assumed that because "since he was like an older gentlem[a]n that it was like normal and it was fine[.]" The balance of her testimony indicated that when she considered his earlier actions in light of everything that happened during the massage, she came to a different conclusion. At that point, she testified that she ended the massage session, left the room, and asked the salon owner to deal with Mr. Zappa. She recalled that after terminating the massage, she "felt uncomfortable and scared." M.E. testified that she informed a colleague and then informed the salon owner about ninety minutes later. She explained that while doing so, she was "shaking * * * hyperventilating and like crying[.]" With respect to her written statement to police, M.E. testified that she described her state of mind during the massage and the fact that as events were unfolding, she perceived them, individually, to be normal. She also noted that she omitted the reference to Mr.

Zappa's comments during the massage because she was unsure about using profanity in the document.

{¶21} The police officer who responded to the salon confirmed many of the details in M.E.'s testimony. He recalled that M.E. was "upset" and noted that "[s]he had mascara running down her face a little bit like she had been crying, very shaky, just genuinely upset." While in this state, the officer explained, M.E. informed him that a customer had made inappropriate gestures during a massage "and he eventually pulled his penis out and then began stroking it[.]" He testified that M.E. had questions about whether she could use profanity in her written statement. The officer also testified that he spoke with Mr. Zappa after meeting with M.E., who "mentioned that he did have an erection[]" and "was a bit embarrassed about it. He said that it just felt so good how she was rubbing his inner thigh, and * * * he said that's why he didn't want to meet in person. He refused to meet in person because he [was] embarrassed about what happened." The officer testified that Mr. Zappa also denied that he exposed himself to M.E.

{¶22} To be sure, M.E.'s and Mr. Zappa's testimony regarding the events in question differ in significant respects. M.E.'s testimony, however, was consistent with the information that she provided to the officer, and her explanation that her perception of Mr. Zappa's conduct evolved during the course of the massage is also consistent with the officer's description of her mental state when he arrived at the salon.

{¶23} Mr. Zappa also questions M.E.'s credibility based on his assessment that she was inexperienced and inadequately trained in providing the massage that he desired. According to his argument, someone with adequate training would have draped him in such a way that the exposure—which he denied or, in the alternative, asserted to have been inadvertent—would not have occurred. Similarly, he argues that a more experienced individual would have recognized

that it was "not uncommon and certainly not indecent exposure" for a massage client to remove his undergarments.

{¶24} In support of his argument, Mr. Zappa directs this Court's attention to *State v. Roberts*, 2d Dist. Montgomery No. 19035, 2002 WL 857775 (May 3, 2002). In *Roberts*, the Second District Court of Appeals considered whether the conduct of a defendant who exposed himself and masturbated openly in a theater that showed adult movies was "likely to * * * affront others" for purposes of the version of R.C. 2907.09(A) in effect at the time.[2] *Roberts* at *2, quoting former R.C. 2907.09(A)(1). The Court noted that the comment to R.C. 2907.09 explains that the statute would not prohibit nudist colonies because "persons who frequent a nudist camp are not likely to be offended by the nudity of others around them." *Roberts* at *3. Consequently, the Court reasoned, the use of the term "others" in R.C. 2907.09(A) "would consist of persons who patronize the type of business establishment that [the defendant] was in" rather than the public at large. *Roberts* at *3.

{¶25} Notably, the Second District Court of Appeals has since retreated from the breadth of its analysis in *Roberts*. *See State v. Johnson*, 2d Dist. Montgomery No. 21335, 2006-Ohio-4935, ¶ 17-19; *State v. Morman*, 2d Dist. Montgomery No. 19335, 2003-Ohio-1048, ¶ 16-18. Even if this Court were to apply that analysis to this case, however, we cannot conclude based upon the evidence at trial that a reasonable massage provider would not be affronted by Mr. Zappa's conduct, regardless of the level of training possessed by the individual. Although the language of R.C. 2907.09(A) "must be interpreted in such a manner as to recognize the legality, even the propriety, of nudity under certain circumstances[,]" resort to this principle is

---

[2] That version of R.C. 2907.09(A) did not include the qualifying language "who are in the person's physical proximity[,]" which is now part of the statute.

also unavailing in Mr. Zappa's case. *See State v. Emsuer*, 12th Dist. Preble No. CA89-12-019, 1990 WL 116928, *3 (Aug. 13, 1990). Both his conduct and the surrounding circumstances are qualitatively different from circumstances in which "[e]xpos[ing] [a] person's private parts" could be a legally protected activity. *Compare Roberts* at *3. Moreover, the question of whether M.E. was *actually* affronted is irrelevant. *See Cleveland v. Carson*, 8th Dist. Cuyahoga Nos. 66084, 68193, 68194, 1995 WL 396346, *3 (July 6, 1995).

{¶26} This Court must "'consider[] the credibility of witnesses'" as part of our manifest weight review. *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175. Nonetheless, this Court is mindful of the well-established principle that a trier of fact enjoys the best position to assess the credibility of witnesses. *State v. Rivera*, 9th Dist. Lorain No. 18CA011263, 2019-Ohio-62, ¶ 39, quoting *State v. Johnson*, 9th Dist. Summit No. 25161, 2010-Ohio-3296, ¶ 15. Given the evidence in this case, this Court cannot conclude that the differences in M.E.'s and Mr. Zappa's testimony make this the exceptional case in which the evidence weighs heavily against the convictions.

{¶27} Mr. Zappa's first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT ERRED IN REFUSING TO ALLOW MR. ZAPPA TO CROSS EXAMINE [M.E.] AND ELICIT TESTIMONY REGARDING HER CREDENTIALS AND LICENSURE IN VIOLATION OF MR. ZAPPA'S RIGHT TO PRESENT A DEFENSE AND GET A FAIR TRIAL AS PROTECTED BY THE 5TH, 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.

{¶28} Mr. Zappa's third assignment of error argues that the trial court abused its discretion by granting the State's motion in limine and prohibiting him from inquiring on cross-examination about M.E.'s level of licensure. This Court does not agree.

{¶29} The question of M.E.'s licensure focused on her credibility as a witness. Mr. Zappa maintained that the licensure question "[went] directly to [M.E.'s] credibility[]" because a licensed massage therapist would have training and experience "that would certainly suggest that that person would be able to differentiate between someone who is receiving a massage and who is inadvertently exposed or not inadvertently exposed." The State, on the other hand, argued that Mr. Zappa could adequately inquire into her perceptions of his conduct by asking questions about her education, training, and experience, but that inquiring about the level of her licensure would lead to a "trial within a trial" regarding whether M.E. provided services beyond the scope of her license. The State argued that doing so would inevitably lead to unfair prejudice and confusion of the issues for purposes of Evid.R. 403(A).

{¶30} Under Evid.R. 403(A), otherwise relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." The exclusion of relevant evidence under Evid.R. 403(A) rests within the discretion of the trial court. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 107, citing *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. When considering a trial court's decision to exclude evidence under Evid.R. 403(A), this Court is "mindful that 'the exclusion of evidence under Evid.R. 403(A) is even more of a judgment call than determining whether the evidence has logical relevance in the first place.'" *State v. Thompson*, 9th Dist. Wayne No. 15AP0016, 2016-Ohio-4689, ¶ 25, quoting *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 40.

{¶31} This Court notes that after the trial court granted the motion in limine, Mr. Zappa waived his right to a jury trial and was tried to the bench. During trial, the trial court permitted Mr. Zappa to inquire fully regarding M.E.'s education, training, and experience—the very topics

that he sought to address by cross-examining her regarding the level of her licensure. Indeed, it appears that in his arguments addressing the motion in limine, Mr. Zappa used M.E.'s level of licensure as a proxy for her education, training, and experience. Further, as noted in the discussion of Mr. Zappa's first and second assignments of error, the evidence in this case is such that a reasonable massage provider of any education, training, and experience could be affronted for purposes of R.C. 2907.09(A).

{¶32} The Court cannot conclude that the exclusion of M.E.'s licensure was an abuse of the trial court's discretion under these circumstances. Mr. Zappa's third assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 4

THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. ZAPPA BY SENTENCING HIM TO THE MAXIMUM 60 DAYS IN JAIL, UNSUSPENDED, AFTER SENTENCING HIM TO TWENTY-FOUR MONTHS COMMUNITY CONTROL, IN VIOLATION OF OHIO LAW AND MR. ZAPPA'S RIGHT TO DUE PROCESS OF LAW, AND HIS RIGHT AGAINST IMPOSITION OF EXCESSIVE SENTENCES SET FORTH IN THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 9 OF THE OHIO CONSTITUTION.

{¶33} In his fourth assignment of error, Mr. Zappa argues that the trial court erred by sentencing him to sixty days in jail and imposing twenty-four months of community control. The State has conceded error in this regard, and this Court agrees that the trial court erred.

{¶34} A trial court has discretion when imposing sentence for misdemeanors. R.C. 2929.22(A). *See also State v. Senz*, 9th Dist. Medina No. 17CA0001-M, 2018-Ohio-628, ¶ 34, quoting *State v. Woody*, 9th Dist. Lorain No. 14CA010679, 2016-Ohio-631, ¶ 15, citing *State v. Schneider*, 9th Dist. Wayne No. 09CA0026, 2009-Ohio-6025, ¶ 6. Consequently, we review

misdemeanor sentences for an abuse of discretion unless the sentence is contrary to law. *Senz* at ¶ 34, quoting *Woody* at ¶ 15, quoting *Schneider* at ¶ 6.

{¶35} R.C. 2929.22(A) provides that unless another sentence is prohibited or mandatory, "a court that imposes a sentence upon an offender for a misdemeanor may impose on the offender any sanction or combination of sanctions under sections 2929.24 to 2929.28 of the Revised Code." A violation of R.C. 2907.09(A)(1) is a fourth-degree misdemeanor, while a violation of R.C. 2907.09(A)(2) is a third-degree misdemeanor. Thus, Mr. Zappa could be sentenced to jail for a maximum of thirty days for violating R.C. 2907.09(A)(1) and sixty days for violating R.C. 2907.09(A)(2). *See* R.C. 2929.24(A)(3)/(4).

{¶36} A trial court also has the discretion to "substitute one or more community control sanctions under [R.C. 2929.26] or [R.C. 2929.27] for any jail days that are not mandatory jail days." R.C. 2929.24(H). Under R.C. 2929.25(A)(1)(a), a trial court may directly impose a community control sanction upon an offender, which may include a residential community control sanction under R.C. 2929.26(A)(1). In the alternative, a trial court may impose a jail term authorized by R.C. 2929.24, "suspend all or a portion of the jail term imposed," and place the offender on community control. R.C. 2929.25(A)(1)(b). *See, e.g.*, *State v. Henry*, 9th Dist. Summit No. 27758, 2016-Ohio-680, ¶ 32; *State v. Pope*, 9th Dist. Medina No. 13CA0031-M, 2014-Ohio-2864, ¶ 10.

{¶37} In reviewing Mr. Zappa's sentence, this Court is cognizant of the Supreme Court of Ohio's admonition that judges "'must consider each offense individually and impose a separate sentence for each offense.'" *State v. Pari*, 9th Dist. Summit No. 28098, 2017-Ohio-4165, ¶ 35, quoting *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, ¶ 9. With that principle in mind, it appears that the trial court imposed a fine of $200 for the violation of R.C.

2907.09(A)(1). With respect to the violation of R.C. 2907.09(A)(2), it appears that the trial court fined Mr. Zappa $500, sentenced him to sixty days in jail, and placed him on community control for twenty-four months.[3]  In other words, the trial court sentenced Mr. Zappa under R.C. 2929.25(A)(1)(b) but failed to "suspend all or a portion of the jail term imposed" in conjunction with placing him under a community control sanction. *See* R.C. 2929.25(A)(1)(b).  A trial court is not authorized to impose community control in this manner. *See Pope* at ¶ 11.

{¶38}  Mr. Zappa's argument that the trial court erred by imposing the maximum jail sentence available for a violation of R.C. 2907.09(A)(2) and placing him under community control without suspending any of his jail term is well taken, and his fourth assignment of error is sustained on that basis.  His remaining arguments are premature.

{¶39}  Mr. Zappa's fourth assignment of error is sustained.

### III.

{¶40}  Mr. Zappa's first, second, and third assignments of error are overruled.  His fourth assignment of error is sustained.  The judgment of the Wayne County Municipal Court is affirmed in part and reversed in part, and this matter is remanded to the trial court for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

---

[3] The form journal entry used by the trial court is somewhat ambiguous in this regard.  It indicates that Mr. Zappa was placed on community control and that a "Residential Sanction" of "60 days" was imposed.  The trial court explicitly informed Mr. Zappa, "You are going to be sentenced to sixty days in the Wayne County Jail to begin immediately."  The parties do not dispute that the trial court sentenced Mr. Zappa to jail.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
LYNNE S. CALLAHAN
FOR THE COURT

CARR, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

NATALIE M. NIESE, Attorney at Law, for Appellant.

JOHN E. JOHNSON, JR., Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and FREELAND OLIVERIO, Assistant Prosecuting Attorney, for Appellee.