[Cite as *Akron v. Atkinson*, 2026-Ohio-1441.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

CITY OF AKRON

    Appellee

v.

CLIFFORD ATKINSON

    Appellant

C.A. Nos.    31383, 31384

APPEAL FROM JUDGMENT
ENTERED IN THE
AKRON MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE Nos.    2022-CR-03747
              2023-CR-02864

DECISION AND JOURNAL ENTRY

Dated: April 22, 2026

---

STEVENSON, Judge.

{¶1} Defendant-Appellant Clifford Atkinson appeals the judgment of the Akron Municipal Court that found him guilty of domestic violence, alleging that his conviction was not supported by sufficient evidence. This Court affirms.

I.

{¶2} Mr. Atkinson was charged with one count of domestic violence under Akron City Code 135.16(A) and one count of resisting arrest under Akron City Code 136.13, both misdemeanors of the first degree. At the City's request, the resisting arrest charge was later amended to a second-degree misdemeanor. Mr. Atkinson pleaded not guilty to the charges and the matter proceeded to a jury trial.

{¶3} L.H. testified at trial that she grew up with Mr. Atkinson and that the two had "reconnected a few years" prior to the May 28, 2022 incident that gave rise to this appeal. The two became romantically and intimately involved after reconnecting, with Mr. Atkinson "stay[ing]" at

L.H.'s home for "about [a] couple months[.]" L.H. drove Mr. Atkinson to work and appointments while he stayed at her home as she was trying to "get [Mr. Atkinson] on the right track . . . so he could pay his rent and support hi[m]self." Mr. Atkinson helped L.H. with her dogs. L.H. testified that the couple broke up in May of 2022 after she realized that Mr. Atkinson could not "hold [his] own weight."

{¶4} Mr. Atkinson went to L.H.'s home on May 28, 2022, and the parties ate together. L.H. drove Mr. Atkinson to his house after he finished eating. She testified that "[w]hen I went to drop [Mr. Atkinson] off, as usual, [he said] 'We need to talk.'" L.H. testified that Mr. Atkinson "snatched my keys out [of] the ignition, took both of my cell phones, and got out of the car" after she told him that there was nothing to talk about.

{¶5} L.H. knocked on a neighbor's door and "bamm[ed]" on the door of the rooming house where Mr. Atkinson lived looking for help after he took her car keys and phones. She testified that Mr. Atkinson then grabbed her and started to choke her. L.H. testified that she "couldn't breathe" when Mr. Atkinson was choking her. Mr. Atkinson "got off of [her]" after a neighbor yelled at him. L.H. testified that Mr. Atkinson scratched her neck causing her to bleed.

{¶6} Akron Police Officer Matthew Ritzinger testified that he went to Mr. Atkinson's residence in response to a 911 call reporting that a "male [was] beating a female." He testified that he observed "injuries to the right side of [L.H.'s] neck." The injuries "look[ed] like scratch marks and there was blood going down the right side of her neck."

{¶7} Officer Ritzinger was wearing a body worn camera and the video from the camera was played at trial and admitted into evidence. Scratches and blood are visible on L.H. in the video. L.H. is seen in the video telling Officer Ritzinger that she and Mr. Atkinson lived together "for

like a month or so" "last year" and she acknowledged that they were boyfriend/girlfriend while living together.

{¶8}  Mr. Atkinson did not call any witnesses or testify in his defense at trial.

{¶9}  The jury found Mr. Atkinson guilty of domestic violence and resisting arrest. The court sentenced Mr. Atkinson after a pretrial investigation on the domestic violence charge. It sentenced Mr. Atkinson to 180 days in jail, with 164 days suspended and credit for 16 days served. The court ordered that Mr. Atkinson complete six months of probation, with anger management, and that he comply with Portage Path services. Mr. Atkinson was ordered to pay a fine and court costs and to have no contact with L.H.[1]

{¶10}  Mr. Atkinson appeals his domestic violence conviction, asserting one assignment of error for this Court's review.

II.

**ASSIGNMENT OF ERROR NO.  I**

**THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE APPELLANT'S CONVICTION FOR DOMESTIC VIOLENCE.**

{¶11}  Mr. Atkinson argues in his sole assignment of error that there was insufficient evidence to support a domestic violence conviction. We disagree.

{¶12}  "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 2009-Ohio-6955, ¶ 18 (9th Dist.), citing *State v.*

---

[1] Mr. Atkinson was later charged in Akron Municipal Court Case No. 23 CR 2864 with criminal damaging or endangering under Akron City Code 131.06, a misdemeanor of the second degree. He appealed after pleading guilty in that case and that appeal is before this Court in Case No. 31384. This Court consolidated Mr. Atkinson's appeals for briefing and argument. Mr. Atkinson has not assigned any errors or presented any issues concerning the criminal damaging or endangering charge. Further, he has not assigned any error regarding his resisting arrest conviction. The only error assigned in this case pertains to Mr. Atkinson's domestic violence conviction.

*Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390. "For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State." *State v. Zappa,* 2022-Ohio-243, ¶ 7 (9th Dist.), citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This Court does not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). Evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

{¶13} Mr. Atkinson was found guilty of domestic violence under Akron City Code 135.16(A) which states that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." This Code is identical to R.C. 2919.25(A).

{¶14} Mr. Atkinson does not challenge the "knowingly cause or attempt to cause physical harm" requirement set forth in Akron City Code 135.16(A). He argues, rather, that there was insufficient evidence to establish that L.H. was a "family or household member." The City argues that the evidence sufficiently established that L.H. was a "family or household member."

{¶15} Akron City Code 135.16(E)(1)(A)(i) defines "[f]amily or household member" as "[a] spouse, [or] a person living as a spouse" "who is residing or has resided with the offender[.]" "Person living as a spouse" is defined in relevant part as:

> a person . . . who otherwise has cohabitated with the offender within the five years prior to the date of the alleged commission of the act in question.

Akron City Code 135.16(E)(2). The Code's definition of "[p]erson living as a spouse" is identical to the definition in R.C. 2919.25(F)(2). "Cohabitation" is not defined in either the Akron City Code or the Ohio Revised Code.

{¶16} In *State v. Williams*, 79 Ohio St.3d 459, 462 (1997), the Ohio Supreme Court defined the term "cohabitation" as contained in R.C. 2919.25 and declined "to adopt a narrow definition of 'reside' which would limit 'family or household members' to those who actually share one residential address." The Court held that "[t]he offense of domestic violence . . . arises out of the relationship of the parties rather than their exact living circumstances" and found that "[t]he essential elements of 'cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium." *Id.* at paragraphs one and two of the syllabus. The Court proceeded to list possible factors that could establish cohabitation under the domestic violence statute, stating:

> [p]ossible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations.

*Id.* at 465. Importantly, the "factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact." *Id.* The Court later clarified that the sharing of familial or financial responsibilities is not required when there is evidence that the victim and the offender lived together. *State v. McClothan*, 2014-Ohio-85, ¶ 13.

{¶17} Here, L.H. testified that she had been in a romantic and intimate relationship with Mr. Atkinson after reconnecting "a few years ago[.]" She testified that the couple had "[j]ust recently" broken up. L.H. testified Mr. Atkinson had stayed at her home for "about [a] couple [of] months" while they were in a relationship and that she drove him to work and appointments during that time. L.H. is heard telling Officer Ritzinger in the body worn camera video that she and Mr. Atkinson lived together "for like a month or so" "last year" and she acknowledged that they were boyfriend/girlfriend while living together. Viewing this testimony in the light most favorable to

the prosecution as required, it is sufficient to establish that L.H. and Mr. Atkinson were "family or household member[s]."

{¶18}  We conclude that there is sufficient evidence upon which a jury could reasonably conclude that all elements of domestic violence in violation of Akron City Code 135.16(A) were established beyond a reasonable doubt. Mr. Atkinson's sole assignment of error is overruled.

## III.

{¶19}  For the reasons stated above, Mr. Atkinson's assignment of error is overruled. The judgment of the Akron Municipal Court is affirmed.

Judgment affirmed.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

CARR, P. J.
FLAGG LANZINGER, J.
CONCUR.


APPEARANCES:

JOHN CHAPMAN, Attorney at Law, for Appellant.

BRIAN T. ANGELONI, Director of Law, and JACQUENETTE S. CORGAN, Assistant Director of Law, for Appellee.