[Cite as *State v. Rivera*, 2023-Ohio-1788.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 22CA011875 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| EDWIN RIVERA | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 20CR102174 |

DECISION AND JOURNAL ENTRY

Dated: May 30, 2023

STEVENSON, Judge.

**{¶1}** Defendant-Appellant Edwin Rivera appeals from his convictions in the Lorain County Court of Common Pleas. This Court affirms.

I.

**{¶2}** A grand jury indicted Mr. Rivera on one count of rape in violation of R.C. 2907.02, a felony of the first degree, and one count of gross sexual imposition in violation of R.C. 2907.05, a felony of the fourth degree. The charges stemmed from a July 13, 2019, incident that occurred in a Lorain County residence.

**{¶3}** The victim, N.D., testified that in 2019 she was 14 years old and living with her grandparents ("Grandparents"). N.D. lived with Grandparents after being removed from the homes of her biological mother and biological father.

**{¶4}** The family scheduled a reunion for the weekend of July 12, 2019, at Grandparents' house. Mr. Rivera travelled with his sister and brother-in-law from Philadelphia to Lorain and

planned to stay at Grandparents' house for the weekend. During his stay, Mr. Rivera used the second-floor guest bedroom across the hallway from N.D.'s room.

{¶5}    On July 13, 2019, several family members came to Grandparents' house for a party. Mr. Rivera drank alcohol at the party. Mr. Rivera acknowledged that, at the party, he hugged and kissed N.D. on the neck.

{¶6}    While N.D. briefly attended the party, she testified that she does not like crowds and that she stayed in her room throughout most of the party. N.D. left the party and went back upstairs to her bedroom "around like 5:00 or 6:00" p.m.

{¶7}    The party was still going on when Mr. Rivera left to go to his room. Mr. Rivera testified that he went right to sleep when he returned to the second-floor guest bedroom.

{¶8}    N.D. testified that she heard Mr. Rivera come upstairs and go into the guest bedroom. N.D. went into the guest bedroom to talk to Mr. Rivera "for a little bit." N.D. testified that she played her flute for Mr. Rivera and that they watched a movie.

{¶9}    N.D. testified that, in response to a sexual scene in the movie, Mr. Rivera "covered my eyes playfully, like he didn't want me to see, but then he started, like, rubbing - - rubbing my - - rubbing my thighs." According to N.D., Mr. Rivera "told me to go lock the door." N.D. locked the door even though she "was uncomfortable."

{¶10}   After locking the bedroom door, N.D. and Mr. Rivera "continued watching the movie." After watching the movie for a little bit, N.D. testified "that's when he grabbed me and pulled me on top of him and wrapped his arms around me to where I can't really move and started kissing me." N.D. testified that Mr. Rivera laid her down, took off his pants, pulled down her pants, and kissed her "on my neck, my breast, my lips." N.D. testified that Mr. Rivera then "raped

me. He slid his - - his penis into my - - my vagina." Mr. Rivera ejaculated "on the bed" and on N.D.'s "lower part." N.D. was menstruating and wearing a pad at the time of the sexual assault.

{¶11} After gathering her things, N.D. went to her bedroom and called her aunt ("Aunt"). N.D. told Aunt that she "just wanted to get out of the house. I didn't want to stay in here no more."

{¶12} When N.D. went downstairs, her grandmother ("Grandmother") noticed that she appeared "upset." N.D. told Grandmother that Aunt was coming to pick her up.

{¶13} Aunt picked up N.D. and, during the car ride, N.D. disclosed the sexual assault to Aunt. Aunt returned to Grandparents' house and told other family members about N.D.'s disclosure. The scene at the house became "chaotic" with family members confronting Mr. Rivera. N.D. became distraught during the chaos and left the house with the intention of killing herself.

{¶14} Rather than harming herself, N.D. called 911 and reported the sexual assault. Police responded to N.D.'s location and took her to the Nord Center where she underwent a sexual assault kit examination. A sexual assault nurse examiner ("SANE") took multiple swabs for potential DNA evidence during the examination.

{¶15} Mr. Rivera returned to Philadelphia on the evening of the assault. After the sexual assault kit examination, Grandmother retrieved the bedspread from the guestroom and noticed "there was blood smeared on it and some other stuff." The "other stuff" "looked like bodily functions."

{¶16} A forensic scientist testified regarding the submitted sexual assault kit from N.D. The forensic scientist testified that N.D.'s underwear and pad tested positive for acid phosphatase, which is found in semen, and that the mixture was "consistent with contributions from [N.D.] and Edwin Rivera." The DNA profile taken from N.D.'s right neck, where Mr. Rivera acknowledged

kissing N.D., was "consistent with contributions from N.D. and Edwin Rivera." N.D.'s vaginal swab was negative for acid phosphatase.

{¶17} Mr. Rivera testified in his own defense. Mr. Rivera maintains that he went to sleep in the guest bedroom on July 13, 2019, and that, while he was "dreaming," N.D. came into the room and initiated the sexual contact. According to Mr. Rivera, he woke-up to N.D. on top of him, "grabbing" his "privates," and he told N.D. to "stop." Mr. Rivera testified that he "pushed" N.D. away from him and that he "pre-ejaculate[d]." Although he was "shocked" from what had just happened, Mr. Rivera "went back to bed" and "went to sleep."

{¶18} Mr. Rivera went downstairs after his sister came into the bedroom and told him about N.D.'s disclosure. Mr. Rivera did not initially tell family members his account of N.D. initiating the sexual contact.

{¶19} The jury found Mr. Rivera guilty of rape and gross sexual imposition. Mr. Rivera appeals this judgment of conviction raising six assignments of error.

I.

## ASSIGNMENT OF ERROR NUMBER ONE

**THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUPPORT CRIMINAL CONVICTIONS OF APPELLANT, RESULTING IN SUBSTANTIVE AND PROCEDURAL DUE PROCESS VIOLATIONS.**

{¶20} Mr. Rivera argues in his first assignment of error that the State failed to present sufficient evidence to support his convictions, resulting in substantive and due process violations. We disagree.

{¶21} Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "A challenge to the sufficiency of the evidence concerns the State's burden of production and is, in essence, a test

of adequacy." *State v. Wilk*, 9th Dist. Medina No. 22CA0008-M, 2023-Ohio-112, ¶ 9, citing *In re R.H.*, 9th Dist. Summit No. 28319, 2017-Ohio-7852, ¶ 25; *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. This Court does not, however, "resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall,* 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶22} In sex offense cases, this Court has held that "'the testimony of the victim, if believed, is sufficient to support a conviction, even without further corroboration. Thus, the testimony of the victim may be enough, and does not need corroborating evidence.'" *State v. Melendez*, 9th Dist. Lorain No. 08CA009477, 2009-Ohio-4425, ¶ 15, quoting *State v. Willard*, 9th Dist. Medina No. 05CA0096-M, 2006-Ohio-5071, ¶ 11.

{¶23} Mr. Rivera was convicted of rape under R.C. 2907.02(A)(2), which states that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "Sexual conduct" means "vaginal intercourse between a male and female; * * * and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another." R.C. 2907.01(A).

{¶24} Mr. Rivera was also convicted of gross sexual imposition under R.C. 2907.05(A)(1), which states that:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender * * * when any of the following applies:

(1) the offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.

"Sexual contact" means "any touching of an erogenous zone of another, including without limitation, the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶25} Upon a thorough examination of the record, this Court concludes that there is sufficient evidence upon which a jury could reasonably conclude that all the elements of rape and gross sexual imposition were established beyond a reasonable doubt. N.D. testified that Mr. Rivera started "rubbing" her "thighs"; that Mr. Rivera "grabbed" her; that Mr. Rivera "pulled" her "on top of him"; and, that Mr. Rivera "wrapped his arms around" her to where she could not "really move" and he "started kissing" her. N.D. testified that Mr. Rivera "kissed me on my neck, my breast, my lips" and that he "raped" her, that "[h]e slid his - - his penis into my - - my vagina."

{¶26} In considering the sufficiency of the evidence, this Court must view the evidence in a light most favorable to the prosecution. *Jenks* at paragraph two of the syllabus. N.D.'s testimony, if believed by the trier of fact, was sufficient to establish beyond a reasonable doubt that Mr. Rivera committed the crimes of rape and gross sexual imposition. N.D.'s testimony established that sexual conduct and sexual contact, as defined by R.C. 2907.01(A) and R.C. 2907.01(B) occurred; that Mr. Rivera compelled N.D. through force or threat of force to engage in sexual conduct or sexual contact; and, that Mr. Rivera committed the offenses of rape and gross sexual imposition.

{¶27} The evidence presented in the light most favorable to the State was sufficient to sustain the convictions of rape and gross sexual imposition. Assignment of error number one is overruled.

**ASSIGNMENT OF ERROR NUMBER TWO**

**THE CONVICTIONS OF APPELLANT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND SAID CONVICTIONS MUST BE VACATED.**

**{¶28}** Mr. Rivera argues in his second assignment of error that the convictions are against the manifest weight of the evidence. We disagree.

**{¶29}** When deciding whether a criminal conviction is against the manifest weight of the evidence, this Court must consider the entire record and "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on a manifest weight of the evidence challenge is reserved for exceptional causes where the evidence weighs heavily against the conviction. *Thompkins*, 78 Ohio St.3d at 387.

**{¶30}** Having reviewed the record, we cannot conclude that this is an exceptional case where the evidence weighs heavily against Mr. Rivera's conviction. *See Otten* at 340. N.D. testified that, in July of 2019 when she was 14 years old, she was watching a movie with Mr. Rivera when he "grabbed" her and "pulled" her on "top of him." According to N.D., Mr. Rivera "wrapped his arms around" her such that she could not "really move" and that he "started kissing" her. N.D. testified that Mr. Rivera laid her down, took off his pants, pulled down her pants, and kissed her "on my neck, my breast, my lips." N.D. further testified that Mr. Rivera "raped me. He slid his - - his penis into my - - my vagina."

**{¶31}** The jury heard testimony from the SANE nurse, who testified as to the multiple swabs for potential DNA evidence that she took during the sexual assault kit examination. A

forensic scientist testified as to the results of the sexual assault kit, including the finding that N.D.'s underwear and pad tested positive for acid phosphatase, which is found in semen, and that the mixture was "consistent with contributions from [N.D.] and Edwin Rivera." The DNA profile taken from N.D.'s neck, where Mr. Rivera acknowledged kissing N.D., was also "consistent with contributions from N.D. and Edwin Rivera." Thus, the DNA evidence supports the jury's findings that sexual contact occurred.

{¶32} Mr. Rivera testified in his own defense and acknowledged that the sexual contact occurred but that N.D. initiated the contact while he was sleeping. Mr. Rivera denied criminal liability and testified that, when he woke up to N.D. on top of him, he "pushed" her away. Mr. Rivera acknowledged that he "pre-ejaculate[d]."

{¶33} The jury was free to believe N.D.'s testimony. *See State v. Clark*, 9th Dist. Wayne No. 14AP0002, 2015-Ohio-2978, ¶ 24. As the trier of fact, the jury was in the best position to judge N.D.'s credibility, as well as the credibility of the other witnesses, and to evaluate their testimony accordingly. *See State v. Simmons*, 9th Dist. Lorain No. 18CA011262, 2020-Ohio-614, ¶ 10. Mr. Rivera acknowledged that he pre-ejaculated, and the forensic scientist testified that the acid phosphatase found on N.D.'s underwear and pad, which is found in semen, was "consistent with contributions from [N.D.] and Edwin Rivera." The fact that the acid phosphatase, which was consistent with a contribution from Mr. Rivera, was found on N.D.'s underwear and pad could have been taken by the jury as evidence of Mr. Rivera's guilt.

{¶34} "'A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact.'" *State v. Zaree*, 9th Dist. Lorain No. 17CA011111, 2017-Ohio-9081, ¶ 5, quoting *State v. Haydon*, 9th Dist. Summit No. 19094, 1999 WL 1260298, *7 (Dec. 22, 1999). Likewise, "[a] verdict is not against the manifest weight of the

evidence because the finder of fact [chose] to believe the State's witnesses rather than the defendant's version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16.

**{¶35}** Upon review, Mr. Rivera has not shown that this is an exceptional case where the jury lost its way by convicting him. *See Otten*, 33 Ohio App.3d at 340. Accordingly, his second assignment of error is overruled.

### ASSIGNMENT OF ERROR NUMBER THREE

**THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S RULE 29 MOTION FOR JUDGEMENT [*SIC*] OF ACQUITTAL.**

**{¶36}** Mr. Rivera argues in his third assignment of error that the trial court erred when it denied his Crim.R. 29 motion on count one. We disagree.

**{¶37}** There is no difference between the standard of review for a challenge to the sufficiency of the evidence and that for a motion for acquittal under Crim.R. 29. *State v. Doss*, 9th Dist. Wayne No. 18AP0027, 2019-Ohio-426, ¶ 18. A sufficiency challenge questions whether the State met its burden of production at trial. *Wilk*, 9th Dist. Medina No. 22CA0008-M, 2023-Ohio-112 at ¶ 9. Sufficiency is "that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *Thompkins*, 78 Ohio St.3d at 386. Whether a conviction is supported by sufficient evidence is a question of law, which is reviewed de novo. *Id.*; *State v. Zappa*, 9th Dist. Wayne No. 20AP0025, 2022-Ohio-243, ¶ 7. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks*, 61 Ohio St.3d at paragraph two of the syllabus.

**{¶38}** Mr. Rivera was charged in count one with rape in violation of R.C. 2907.02(A)(2). As previously set forth, R.C. 2907.02(A)(2) states that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "Sexual conduct" means "vaginal intercourse between a male and female; * * * and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another." R.C. 2907.01(A). The statute provides that "[p]enetration, however slight, is sufficient to complete vaginal or anal intercourse." *Id.*

**{¶39}** Mr. Rivera argues that the trial court erred by denying his Crim.R. 29 motion based on the State's purported failure to present evidence that he vaginally penetrated N.D. N.D. directly testified to vaginal penetration. N.D. testified that Mr. Rivera "slid his - - his penis into my - - my vagina." This testimony was sufficient to satisfy the statutory definition of sexual conduct. *See Melendez*, 9th Dist. Lorain No. 08CA009477, 2009-Ohio-4425, at ¶ 15.

**{¶40}** Accordingly, we conclude that the trial court properly denied Mr. Rivera's Crim.R. 29 motion. Mr. Rivera's third assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER FOUR

**THE TRIAL COURT ERRED IN REFUSING TO ALLOW CROSS EXAMINATION OF THE ALLEGED VICTIM ON HER MENTAL HEALTH ISSUES, NUMEROUS SUICIDE ATTEMPTS, AND A FALSE 911 CALL, THEREBY DENY[ING] APPELLANT THE RIGHT OF CONFRONTATION AND TO PRESENT A COMPLETE DEFENSE, AND SUBSTANTIVE AND PROCEDURAL DUE PROCESS.**

**{¶41}** Mr. Rivera argues in his fourth assignment of error that the trial court erred when it limited his cross-examination of N.D. by precluding him from asking questions regarding N.D.'s mental health and an alleged 911 call in another matter. We disagree.

{¶42} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180 (1987). Thus, an appellate court will not reverse the trial court's decision absent an abuse of discretion. *State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, ¶ 75. "The term 'abuse of discretion' connotes more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from substituting its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). Even if an appellant demonstrates that the trial court's ruling was an abuse of discretion, he does not establish reversible error unless he shows that the error prejudiced his substantial rights. *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, ¶ 20.

{¶43} The State orally moved at trial for an order limiting defense counsel's cross-examination of N.D. The State moved for an order precluding defense counsel from questioning N.D. about her "medical history and prior suicide attempts" and from referencing N.D.'s "medication, [and] diagnosis of depression or anxiety." The State argued that any such information was not relevant to this case; that any such information was not "probative of the victim's character for truthfulness or her credibility;" and, that any such information should be excluded as it was "inextricably related to her [N.D.'s] prior sexual abuse."

{¶44} The referenced "prior sexual abuse case" involved another family member who assaulted N.D. According to the State, that case "was prosecuted and actually pled guilty to." N.D. attempted suicide around the time of this prior sexual abuse case.

{¶45} The State argued to the trial court that if the inquiry into N.D.'s medical history and prior suicide attempts continued, "it's goading her [N.D.] into revealing to the jury why she tried

to commit suicide, or why she has these conditions that she has, which I believe is impermissible through the rape shield law."

**{¶46}** In granting the State's oral motion in limine, and finding that the rape shield law applied, the trial court stated that "no one should be punished because of prior incidents involving sex" and held that there would be no cross-examination as to the "victim's prior suicide attempts or mental health treatment." The trial court further noted that, through Grandmother's testimony, the jury already heard testimony as to N.D.'s mental health problems. The trial court explained that "the fact that she [N.D.] has had some – suffered from depression doesn't go to her ability to perceive experiences and describe them."

**{¶47}** The trial court also cited *State v. Lawhon*, 5th Dist. Muskingum No. CT97-023, 1998 WL 346862 (June 10, 1998), which the State relied upon. Like N.D., the victim in *Lawhon* had issues stemming from a previous rape. The *Lawhon* court found that the rape shield law was applicable and that "the relevancy of the suicide attempt" was "suspect." *Lawhon* at \*2. Likewise, the trial court here did not abuse its discretion in finding that questions about N.D's mental health issues would lead to exposure of her sexual assault that led to her mental health issues.

**{¶48}** The record establishes that the trial court did not abuse its discretion when it excluded further cross-examination of N.D. about her mental health issues and prior suicide attempts. R.C. 2907.02(D), as in effect in July of 2019, states that:

> [e]vidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activation, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

**{¶49}** R.C. 2907.02(D) "essentially prohibits the introduction of any extrinsic evidence pertaining to the victim's sexual activity unless it involves evidence of the origin of semen, pregnancy, or disease, or of the victim's past sexual activity with the offender." *State v.* Williams, 21 Ohio St.3d 33, 34 (1986). As this Court has recognized, even if the evidence pertains to "origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, it is only admissible if the court determines that it "is material to a fact at issue and that its probative value is not outweighed by its prejudicial or inflammatory nature. " *State v. McGuire*, 9th Dist. Nos. 16423, 16431, 1994 WL 700082, *7 (Dec. 14, 1994), citing R.C. 2907.02; *In Re Michael*, 119 Ohio App.3d 112, 118 (2d Dist.1997), citing R.C. 2907.02(D) ("even if one of the foregoing exceptions applies, introduction of such evidence is permitted only if the court finds that the evidence is material to a fact at issue and that its prejudicial nature does not outweigh its probative value.")

**{¶50}** The record establishes that N.D.'s mental health issues and prior suicide relate to a prior sexual assault where she was the victim. This evidence was properly excluded as it does not connote "evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender." *See Lawhon* at *2. Therefore, the trial court did not abuse its discretion by preventing Mr. Rivera from cross-examining N.D. about her mental health history.

**{¶51}** Even if an appellant demonstrates that the trial court's ruling was in error, he does not establish reversible error unless he shows that the error prejudiced his substantial rights. *Beard*, 106 Ohio St.3d 237, 2005-Ohio-4787, at ¶ 20. Grandmother testified as to N.D.'s mental health, including N.D.'s depression diagnosis, anti-depressant and anti-anxiety mediations, and prior suicide attempts. From that testimony, the jury heard the same evidence that Mr. Rivera sought to introduce and it was able to weigh that information when determining N.D.'s credibility. Mr.

Rivera's proposed cross-examination of N.D. would have been duplicative of Grandmother's testimony. Ohio "[c]ourts have not hesitated to find that error is harmless where the excluded evidence is merely cumulative to other compelling evidence." *State v. West*, 10th Dist. Franklin No. 06AP-11, 2006-Ohio-6259, ¶ 9. *See also State v. Bolling*, 2d Dist. Montgomery No. 20225, 2005-Ohio-2509, ¶ 19 ("because the same evidence Defendant sought to introduce via lay opinion testimony was admitted via other means, and permitted Defendant to ask the jury to draw the same conclusions, the trial court's error in excluding that lay opinion testimony was harmless error at best.").

{¶52} Mr. Rivera also argues in his fourth assignment of error that N.D. made a prior 911 call regarding another incident that was purportedly false and that the trial court erred by precluding him from cross-examining N.D. about that call. We disagree.

{¶53} During Grandmother's cross-examination, defense counsel asked her about a prior 911 call N.D. made wherein N.D. falsely claimed that someone had been shot. Grandmother responded that she did not know what counsel was talking about. Defense counsel said, "You're not aware of that?" Grandmother responded "No." Defense counsel did not revisit the purported 911 call, nor did he proffer its contents into the record. Defense counsel never questioned N.D. about the purported call during her cross-examination and, as such, the trial court never prevented further questioning about said call.

{¶54} The trial court did not issue an order precluding Mr. Rivera from cross-examining N.D. about the alleged 911 call. Trial counsel never asked N.D. about the purported call; he only questioned Grandmother about the call and she denied knowledge of it. There is no factual basis in the record for Mr. Rivera's assignment of error regarding the purported 911 call.

**{¶55}** For the reasons set forth above, Mr. Rivera's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR NUMBER FIVE

**THE TRIAL COURT ERRED WHEN IT GAVE IMPROPER JURY INSTRUCTIONS WHICH VIOLATED APPELLANT'S DUE PROCESS RIGHT TO A FAIR TRIAL.**

**{¶56}** Mr. Rivera argues in his fifth assignment of error that the trial court erred when it gave the jury an instruction on force of a parent or other authoritative figure. We disagree.

**{¶57}** "[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as a fact-finder." *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus, citing Crim.R. 30(A). A trial court should give a requested jury instruction if it is a correct statement of the law, is applicable to the facts in the case, and "if reasonable minds might reach the conclusion sought by the requested instruction." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 240.

**{¶58}** "This Court reviews a trial court's decision to give or not give jury instructions for an abuse of discretion under the particular facts and circumstances of the case." *State v. Calise*, 9th Dist. Summit No. 26027, 2012-Ohio-4797, ¶ 68 citing *State v. Sanders,* 9th Dist. No. 24654, 2009–Ohio–5537, ¶ 45. An abuse of discretion implies the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

**{¶59}** Mr. Rivera argued that the trial court erroneously gave the following instruction to the jury:

> When the relationship between the victim and the defendant is one of child and an authority figure such as an elder family member, the element of force need not be openly displayed or physically brutal. It may be subtle, slight or psychological. Evidence of an express threat of harm or evidence of significant physical restraint is not required.

This is the same instruction as contained in the Ohio Jury Instructions, CR Section 507.02(A)(12) (Rev. Jan. 22, 2011).

**{¶60}** We conclude that the trial court did not abuse its discretion in giving this instruction to the jury. The jury heard testimony that, at the time of the incident, Mr. Rivera was 52 years old while N.D. was 14 years old. There was testimony that Mr. Rivera and N.D.'s grandfather were "very close" and "loved each other;" that Mr. Rivera was a trusted member of the family; and, that N.D. called Mr. Rivera "tio" which means uncle in Spanish. Mr. Rivera purchased a sweatshirt for N.D. and sat on a bench with N.D. during a community concert event on the Friday evening before the assault. With respect to how she is to treat older family members, like Mr. Rivera, N.D. testified:

> Q: Were you taught anything about how kids are supposed to treat the adults in your family?
>
> A: We grew up to respect our elders.
>
> Q: Okay. And what does that mean by respecting your elders?
>
> A: Respecting, like our aunts and uncles and giving – I don't know.
>
> Q: Doing what they say?
>
> A: Yes.

**{¶61}** Ohio courts have recognized the relevance of a force of an authority figure jury instruction where an older relative or family friend sexually assaults or rapes a younger family member. *See State v. Frazier*, 8th Dist. Cuyahoga No. 107680, 2019-Ohio-2739, ¶ 44-45 (the trial court's force of authority figure jury instruction was affirmed on appeal where victim's uncle, the defendant, was 36 years old and the victim was 13 years old at the time of the assault); *State v. Haschenburger*, 7th Dist. Mahoning No. 05 MA 192, 2007-Ohio-1562, ¶ 50 (trial court's force of

authority figure jury instruction affirmed on appeal where the defendant was the older friend of the victim's father.)

{¶62} Based on the evidence in the record, we conclude the trial court did not abuse its discretion in giving the jury the force of an authority figure jury instruction. Mr. Rivera's fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER SIX

**THE TRIAL COURT ERRED WHEN IT IMPOSED AN INDEFINITE PRISON TERM.**

{¶63} Mr. Rivera argues in his sixth assignment of error that the Reagan Tokes Law ("Reagan Tokes"), under which he was sentenced, is unconstitutional as it violates the doctrine of separation of powers and is void for vagueness. This Court rejects these arguments.

{¶64} Based on the nature of Mr. Rivera's objection in the trial court, different standards of review apply on appeal. This Court's review of Mr. Rivera's separation of powers argument, which was presented in the trial court, is de novo. *State v. Franks*, 9th Dist. Summit No. 28533, 2017-Ohio-7045, ¶ 21, citing *State v. Honey*, 9th Dist. Medina No. 08CA0018-M, 2008-Ohio-4943,¶ 4. When applying a de novo review on constitutional matters, this Court notes that statutes are entitled to a "strong presumption of constitutionality." *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, ¶ 7. The burden is on the party challenging the validity of the statute to establish "beyond a reasonable doubt that the statute is unconstitutional." *Wilson v. Kasich*, 134 Ohio St.3d 221, 2012-Ohio-5367, ¶ 18; *State v. Smith*, 9th Dist. Wayne No. 15AP0001, 2017-Ohio-359, ¶ 28.

{¶65} Mr. Rivera did not raise a void for vagueness argument to the trial court. "The failure to challenge the constitutionality of a statute in the trial court forfeits all but plain error on appeal, and the burden of demonstrating plain error is on the party asserting it." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 2. Plain error occurs if there has been an

error, meaning a deviation from the legal rule; the error was an obvious defect; and the error affected a substantial right. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). This Court should take notice of plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶66} Mr. Rivera first asserts in his brief that Reagan Tokes "violates the separation of powers doctrine, as it allows the Ohio Department of Rehabilitation and Corrections, to extend an inmate's release date based upon conduct in prison." Mr. Rivera maintains, without further explanation or argument, that this "usurps the power rightfully delegated to the judiciary and violates separation of powers."

{¶67} Mr. Rivera has not properly developed an argument in his merit brief as to the constitutionality of Reagan Tokes, specifically as to his violation of the separation of powers argument. As stated above, a party challenging a statute's constitutionality bears the burden of proving that it is unconstitutional beyond a reasonable doubt. *Wilson*, 134 Ohio St. 3d 221, 2012-Ohio-5367, at ¶ 18; *Smith*, 9th Dist. Wayne No. 15AP0001, 2017-Ohio-359, at ¶ 28. Mr. Rivera failed to set forth any argument to support his position that the indefinite sentencing scheme under Reagan Tokes is unconstitutional as it violates the separate of powers. We decline to address the merits of this undeveloped argument.

{¶68} This Court has rejected Reagan Tokes challenges when, as in this case, the appellant failed to properly develop his or her arguments and thus failed to establish, by a reasonable doubt, that the statute is unconstitutional. *See State v. Arthur*, 9th Dist. Medina No. 21CA0075-M, 2022-Ohio-1980; *State v. Bennett*, 9th Dist. Medina No. 21CA0055-M, 2022-Ohio-4796.

{¶69} With respect to his void for vagueness argument, Mr. Rivera maintains without further explanation or analysis, that Regan Tokes "fails to give the inmate proper notice of the conduct which could extend the presumed release date, thereby making the statute void for vagueness." Mr. Rivera has presented this Court with a very limited plain error argument. Apart from a conclusory statement, Mr. Rivera has not explained why this is an exceptional case where plain error must be found "to prevent a manifest miscarriage of justice." *Long*, 53 Ohio St.2d 91 at paragraph three of the syllabus. As this Court concluded in *State v. Coleman*, 9th Dist. Summit No. 30133, 2022-Ohio-3808, ¶ 60, it is loath to address the constitutionality of Reagan Tokes "based on the limited argument presented herein."

{¶70} Mr. Rivera has not properly developed his arguments as to the constitutionality of Reagan Tokes. Assignment of error number six is therefore overruled.

### III.

{¶71} For the reasons stated above, Mr. Rivera's first, second, third, fourth, fifth, and sixth assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.


SCOT STEVENSON
FOR THE COURT


SUTTON, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

GREGORY S. ROBEY, Attorney at Law, for Appellant.

J.D. TOMLINSON, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.