[Cite as *State v. Kirkbride*, 2024-Ohio-291.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

| STATE OF OHIO | | C.A. No. 22CA0077-M |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| ROBERT P. KIRKBRIDE | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 21CR0211 |

DECISION AND JOURNAL ENTRY

Dated: January 29, 2024

FLAGG LANZINGER, Judge.

{¶1} Defendant-Appellant, Robert Kirkbride, appeals from his convictions in the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} Kirkbride began living with K.B.'s family when she was eight years old. K.B. shared an apartment with her mother and siblings. Her mother and Kirkbride became romantically involved and had a child together. Kirkbride primarily resided with the family until K.B. was twelve years old. He left the apartment in 2017 after K.B.'s mother secured a restraining order against him.

{¶3} In January 2020, the State removed K.B. and her siblings from her mother's care. K.B. was placed in foster care. She began receiving therapy. In October 2020, she wrote a letter to her therapist and case worker. K.B. disclosed that Kirkbride sexually abused her for years while

living with her. She later gave a detailed account of the abuse during an interview at the child advocacy center.

{¶4} Kirkbride was indicted on six counts of rape, each of which pertained to a specific time frame. The first count alleged that K.B. was nine years old when Kirkbride raped her. The last count alleged that she was either eleven or twelve years old when he raped her.

{¶5} A jury found Kirkbride guilty on all counts. The jury further found that he raped K.B. when she was less than ten years old. The trial court sentenced Kirkbride to life in prison without parole. The trial court also classified him as a tier III sexual offender.

{¶6} Kirkbride now appeals from his convictions. He raises four assignments of error for review. For ease of analysis, we reorder several of his assignments of error.

II.

ASSIGNMENT OF ERROR II

MR. KIRKBRIDE'S CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE AS A MATTER OF LAW[.]

{¶7} In his second assignment of error, Kirkbride argues his rape convictions are based on insufficient evidence. We do not agree.

{¶8} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶9} A rape occurs when a person engages in sexual conduct with another who is not his spouse and who is "less than thirteen years of age * * *." R.C. 2907.02(A)(1)(b). Kirkbride has not challenged any individual element of his rape convictions. Instead, he argues the State failed to prove he committed a rape during each of the timeframes alleged in his indictment. According to Kirkbride, the sexual acts K.B. described "were all lumped together with no details."

{¶10} The State charged Kirkbride as follows. His first count applied to a to a period between September 1, 2014, and February 27, 2015, when K.B. was nine years old. His second count applied to a period between February 28, 2015, and June 30, 2015, when K.B. was ten years old. His third count applied to a period between July 1, 2015, and December 31, 2015, when K.B. was still ten years old. His fourth count applied to a period between January 1, 2016, and June 30, 2016, when K.B. was either ten or eleven years old. His fifth count applied to a period between July 1, 2016, and December 31, 2016, when K.B. was eleven years old. Finally, his sixth count applied to a period between January 1, 2017, and April 1, 2017, when K.B. was either eleven or twelve years old.

{¶11} K.B. testified that, when she was eight years old, her mother invited Kirkbride to come live with them. At that time, K.B. lived in an apartment with her mother and three siblings. She and her siblings shared one bedroom. Her mother slept in a separate bedroom. K.B. testified that her mother often left her and her siblings at home with Kirkbride.

{¶12} K.B. testified that she was nine years old the first time Kirkbride sexually assaulted her. She knew she was nine because the incident occurred before her mother gave birth to Kirkbride's child. That child was born three days before K.B.'s tenth birthday. K.B. testified that she and Kirkbride were alone inside her mother's bedroom when he shut the door and told her to

remove her clothes. Kirkbride kissed her, rubbed his penis around her vagina, and inserted it. K.B. testified that Kirkbride told her his penis "didn't go far enough to pop [her] cherry."

{¶13} K.B. testified that, several times, Kirkbride sexually assaulted her in the living room of the apartment. She recalled sitting on the couch with him and him grabbing a blanket. Kirkbride would use the blanket to cover her and his lap. He would then have her perform oral sex on him beneath the blanket.

{¶14} K.B. also testified that, several times, Kirkbride sexually assaulted her on her bedroom floor. Kirkbride would come into the bedroom at night and wait for K.B.'s siblings to fall asleep. He would then have her lie on the ground with him next to her bed and engage in oral sex.

{¶15} K.B. testified that Kirkbride lived with them until she was twelve years old. She testified that he had vaginal intercourse with her at least five times over the years. The last time Kirkbride had sexual intercourse with K.B. was a few months before he moved out.

{¶16} When interviewed at the child advocacy center, K.B. also stated that Kirkbride had vaginal intercourse with her at least five times. She stated that he had oral sex with her on many more occasions. She explained how Kirkbride would make her engage in oral sex on the living room couch and the floor of her bedroom. She estimated that he sexually abused her an average of once a month or more during the time he lived with her and her family.

{¶17} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that the State proved each of Kirkbride's six rape counts beyond a reasonable doubt. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. K.B. specifically testified that she was nine years old the first time Kirkbride raped her. She also testified that the last rape occurred a few months before he left the apartment. K.B. was twelve when Kirkbride moved out.

While she did not supply exact dates for the other rapes she endured, she did testify that Kirkbride had vaginal intercourse with her at least five times and that, on average, he sexually assaulted her once a month. "The courts of Ohio have recognized that a certain degree of temporal inexactitude is permissible when the victim of the abuse is a minor." *State v. Russell*, 9th Summit No. 14714, 1991 WL 57331, *2 (Apr. 10, 1991). Moreover, "[i]n sex offense cases, this Court has held that the testimony of the victim, if believed, is sufficient to support a conviction, even without further corroboration." (Internal citations and quotations omitted.) *State v. Rivera*, 9th Dist. Lorain No. 22CA011875, 2023-Ohio-1788, ¶ 22. Upon review, Kirkbride has not shown that the State set forth insufficient evidence to sustain his convictions. Accordingly, his second assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED BY FAILING TO DETERMINE WHETHER B.B. A CHILD OF UNSOUND MIND WAS COMPETENT TO TESTIFY.

{¶18} In his fourth assignment of error, Kirkbride argues the trial court erred when it failed to determine whether one of the State's witnesses was competent to testify. For the following reasons, this Court rejects his argument.

{¶19} "For reversible error to exist, there must be both error and resulting prejudice." *State v. Ross*, 9th Dist. Lorain No. 21CA011729, 2023-Ohio-1185, ¶ 25. An appellant must show that the error "impacted the verdict." *State v. Mims*, 9th Dist. Lorain No. 21CA011801, 2023-Ohio-2806, ¶ 23.

{¶20} The State subpoenaed K.B.'s younger sister to testify. At the time of trial, the younger sister was thirteen years old. Nevertheless, the State advised the trial court that the younger sister had some form of autism, suffered from "some speech difficulties and things[,]" and "function[ed] at a lower level than of her age." When the younger sister took the stand, the

prosecutor had difficulty eliciting responses from her. The only information she shared was her name, her age, and the names of her siblings. The prosecutor excused her without inquiring further. Defense counsel declined cross-examination.

{¶21} Kirkbride argues that it is a trial court's duty to voir dire children to ensure their competence. He has not explained, however, how he was prejudiced by the admission of the younger sister's limited testimony. Indeed, he admits "it is unclear what conclusion the jury [] made based on [the younger sister's] testimony * * *." Even assuming the trial court erred by not determining the younger sister's competence to testify in advance of trial, Kirkbride has not established how the admission of her testimony impacted the verdict. *See Mims* at ¶ 23. Accordingly, his fourth assignment of error is overruled.

ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED A REVERSIBLE ERROR WHEN IT ALLOWED TWO WITNESSES TO TESTIFY WHOSE TESTIMONY ARE (sic) IRRELEVANT, PREJUDICIAL AND OTHER ACTS EVIDENCE.

{¶22} In his first assignment of error, Kirkbride argues the trial court erred when it allowed the State to call certain witnesses to testify about other acts evidence. For the following reasons, this Court rejects his argument.

{¶23} Initially, we note that there is a discrepancy between Kirkbride's captioned assignment of error and corresponding argument. His assignment of error challenges the trial court's decision to allow two witnesses to testify. His corresponding argument challenges the court's decision to allow three witnesses to testify, not two. We will assume for purposes of our analysis that Kirkbride intends to challenge all three witnesses. Because two of those witnesses trigger the same analysis, we will address them together.

The Older Sister and the Younger Sister

{¶24} Before trial, the State expressed its intention to call K.B.'s older sister and younger sister to testify. The State indicated that each sister would describe how Kirkbride had touched them inappropriately. As previously noted, however, the younger sister was only able to answer questions about her name, her age, and the names of her siblings. The State excused her without asking her any additional questions. The State then called the older sister to testify. When the older sister took the stand, she would not speak. The State asked her a few basic questions, including her name, but she would not respond. The State quickly excused her.

{¶25} Kirkbride argues the trial court erred when it allowed the State to call the older sister and the younger sister to testify. He notes that he was not charged with committing any criminal acts towards the sisters. According to Kirkbride:

> It is unclear what occurred during the testimonies [of the sisters], however, it is clear that something occurred during their testimonies to cause both the State and defense attorney to stop eliciting testimony from the witnesses. Whatever occurred during [their] testimonies [was] irrelevant and potentially highly prejudicial.

Thus, Kirkbride argues, the trial court should not have allowed the sisters to testify.

{¶26} Once again, "[f]or reversible error to exist, there must be both error and resulting prejudice." *Ross*, 2023-Ohio-1185, at ¶ 25. An appellant must show that the error "impacted the verdict." *Mims*, 2023-Ohio-2806, at ¶ 23. "It is well-settled that 'speculation cannot prove prejudice.'" *State v. Kirkland*, 9th Dist. Lorain No. 19CA011485, 2022-Ohio-4325, ¶ 15, quoting *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, ¶ 54.

{¶27} Kirkbride has not established that he suffered any prejudice as a result of the older sister and the younger sister taking the stand. Neither sister testified about any other acts. The record reflects that the State excused each sister from testifying after they either could not or would not answer the State's questions. To the extent Kirkbride suggests "something" more occurred

during their respective testimonies, his argument rests entirely on speculation. *See Kirkland* at ¶ 15, quoting *Morgan* at ¶ 54. He has not shown that his verdict was impacted by either sister taking the stand. *See Mims* at ¶ 23. Accordingly, to the extent his first assignment of error concerns the sisters, it is overruled.

The Jailhouse Informant

{¶28} A jailhouse informant testified that he and Kirkbride were inmates at the same jail while awaiting trial in their respective cases. According to the informant, Kirkbride admitted that he sexually assaulted K.B. and her younger sister. Regarding the younger sister, Kirkbride said he put her "up on the sink and was humping her * * *." Regarding K.B., Kirkbride said he "made her give him a blow job and then made her ride him and then he laughed * * * hysterically about it, showed no remorse."

{¶29} The trial court voir dired the jailhouse informant before allowing him to testify. The court engaged in an extensive other acts analysis on the record and explained its rationale for allowing the informant's testimony. Although the trial court allowed the informant to testify, it gave the jury two limiting instructions. The court instructed the jury that it could not consider the informant's testimony as proof of Kirkbride's character. Rather, the jury was told the evidence was being admitted for the limited purpose of proving Kirkbride's motive, opportunity, intent, preparation, plan, or absence of mistake or accident regarding his charges.

{¶30} Kirkbride argues the trial court erred when it allowed the jailhouse informant to testify. His analysis consists of a single sentence. He writes: "What is described by [the jailhouse informant] was clearly 'other acts' or wrong doing evidence that is not permitted per Evid. R. 401 and Evid. R. 404."

{¶31} Other acts evidence "is not admissible when its sole purpose is to show the [defendant's] propensity or inclination to commit crime." *State v. Curry*, 43 Ohio St.2d 66, 68 (1975). "Evid.R. 404(B) does, however, allow evidence of the defendant's other crimes, wrongs, or acts to be admitted 'for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" (Emphasis omitted.) *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, ¶ 22, quoting Evid.R. 404(B). When a proponent seeks to admit other acts evidence, trial courts must examine whether the evidence is relevant, whether it has been presented for a permissible, non-propensity purpose, and whether its probative value is substantially outweighed by the danger of unfair prejudice. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 20. *See also Hartman* at ¶ 29. "Weighing the probative value of the evidence against its prejudicial effect is a highly fact-specific and context-driven analysis * * * [that] necessarily involves an exercise of judgment * * *." *Hartman* at ¶ 30.

{¶32} Although Kirkbride references Evid.R. 401 and 404 in his brief, he has not engaged in any meaningful analysis as to the application of either rule. *See State v. Jackson*, 9th Dist. Summit No. 28691, 2018-Ohio-1285, ¶ 30. He has not explained why the informant's testimony was irrelevant. He has not explained why that testimony did not satisfy one or more of the non-propensity purposes listed in Evid.R. 404(B). Finally, he has not examined whether the probative value of that testimony was substantially outweighed by any danger of unfair prejudice, particularly in light of the trial court's limiting instructions. This Court will not construct and engage in an analysis on Kirkbride's behalf. *See* App.R. 16(A)(7). Accordingly, his first assignment of error is overruled.

ASSIGNMENT OF ERROR III

MR. KIRKBRIDE'S CONVICTIONS WERE AGAINST THE MANIFEST
WEIGHT OF EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE
OF THE CONSTITUTION.

{¶33} In his third assignment of error, Kirkbride argues his convictions are against the manifest weight of the evidence. We disagree.

{¶34} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26. This Court "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Warren*, 9th Dist. Summit No. 29455, 2020-Ohio-6990, ¶ 25, quoting *State v. Tolliver*, 9th Dist. Lorain No. 16CA010986, 2017-Ohio-4214, ¶ 15.

{¶35} Kirkbride argues his convictions are against the manifest weight of the evidence because K.B. was not a credible witness. He notes that she waited years to disclose the alleged abuse. He further notes that she never claimed to be sexually abused when social services removed her from her mother's care. Regarding the jailhouse informant, Kirkbride likewise challenges his credibility. Kirkbride argues that the informant fabricated the incriminating statements against him and gave them to the police because he hoped for leniency in his own case.

{¶36} K.B. testified that, when Kirkbride was abusing her, she was afraid to disclose the abuse to anyone. Kirkbride warned her not to tell. K.B. also worried that no one would believe her. Even after Kirkbride moved out, K.B. testified, she feared he would return. She did not disclose the abuse until October 2020, about three years after she last had contact with Kirkbride. She testified that she decided to write her therapist and her case worker a letter about the abuse because she kept thinking about it and was worried Kirkbride might abuse others.

{¶37} Courtney Dunlap-Knoll, a supervisor with Medina County Children Services, met K.B. in January 2020. She interviewed K.B. as part of the investigation social services conducted when removing K.B. and her siblings from their mother's care. Ms. Dunlap-Knoll asked K.B. questions in connection with a routine safety assessment. At that time, K.B. did not disclose any sexual abuse. Ms. Dunlap-Knoll testified, however, that it is not unusual for victims of sexual abuse to delay reporting. She testified that sexual abuse victims often wait to disclose until they feel they are in a safe environment.

{¶38} The State played a recording of K.B.'s interview at the child advocacy center. During her interview, K.B. described Kirkbride raping her in her mother's bedroom and forcing her to have oral sex on the living room couch and her bedroom floor. She stated that Kirkbride warned her not to tell. She also stated that she went along with the abuse because she worried that, if she did not, Kirkbride would sexually abuse her sisters. At one point during the interview, the interviewer asked K.B. how often the abuse occurred. The interviewer asked K.B. whether Kirkbride abused her every day. K.B. initially agreed it was every day but quickly corrected herself. She estimated that Kirkbride abused her an average of once a month and sometimes more. She said white stuff would come out of his penis when he sexually assaulted her, and he would

use a sock to wipe it. K.B. appeared quiet and withdrawn throughout the interview. She also expressed concern about the interviewer and others believing her.

{¶39} As noted, a jailhouse informant testified against Kirkbride. He testified that Kirkbride admitted sexually abusing K.B. and her sister. Specifically, Kirkbride said he made K.B. "give him a blow job and then made her ride him and then he laughed * * * hysterically about it, showed no remorse." He also said Kirkbride put the younger sister "up on the sink and was humping her * * *." Because Kirkbride was not charged with respect to the younger sister, the State offered the statement about the younger sister as other acts evidence. *See* Discussion of Assignment of Error I, *supra*.

{¶40} The informant agreed he was facing criminal charges at the time he shared Kirkbride's statements with law enforcement. He also agreed that he asked the police to tell the prosecutor in his case that he had provided helpful information in Kirkland's case. The informant ultimately pleaded guilty, and the prosecutor in his case made a sentencing recommendation to the judge. Yet, the judge did not follow that recommendation. The informant received a significantly longer sentence. At the time of Kirkbride's trial, the informant was already serving his sentence. The informant testified that his sentencing recommendation was never dependent upon his agreeing to testify against Kirkbride and he was not receiving any benefit for his testimony.

{¶41} Kirkbride testified in his own defense. He denied ever speaking directly with the jailhouse informant. He suggested that the informant may have learned the names of K.B. and the younger sister by listening in while Kirkbride spoke with his cellmate. According to Kirkbride, he never sexually abused K.B. in any manner. He theorized that she may have falsely accused him because he had broken his promise to always be there for her. He testified that he always treated K.B. and her siblings as if they were his own children.

{¶42} Kirkbride admitted that he was interviewed by a detective after K.B. accused him of sexual abuse. During that interview, he was asked whether there had ever been any type of situation that could have caused K.B. to be confused about his actions. Kirkbride told the police that, on occasion, he would apply rash cream to K.B.'s genital region. He suggested that one of his fingers may have accidentally slipped inside K.B.'s vagina while he was applying the cream.

{¶43} Having reviewed the record, we cannot conclude that this is the exceptional case where the evidence weighs heavily against Kirkbride's convictions. *See Croghan*, 2019-Ohio-3970, at ¶ 26. The jury heard K.B. testify in detail about Kirkbride's abuse. At the time she disclosed the abuse, she was living in foster care and had not seen Kirkbride for several years. The jury was in the best position to judge her credibility, as well as the credibility of Kirkbride, the jailhouse informant, and any additional witnesses. *See State v. Steible*, 9th Dist. Lorain No. 21CA011787, 2023-Ohio-281, ¶ 20. "This Court will not overturn a verdict on a manifest weight challenge simply because the jury chose to believe the State's version of the events." *State v. Harris*, 9th Dist. Medina No. 23CA0012-M, 2024-Ohio-196, ¶ 19. Because Kirkbride has not shown that the jury lost its way in convicting him, we reject his argument to the contrary. His third assignment of error is overruled.

## III.

{¶44} Kirkbride's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, P. J.
STEVENSON, J.
CONCUR.

APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and STEFANIE H. ZARANEC, Assistant Prosecuting Attorney, for Appellee.